UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:16 CR 39 JAR ) |
| RAMORI ROGERS, | ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S TRIAL BRIEF**

COMES NOW, the United States of America, by and through Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Robert F. Livergood, Assistant United States Attorney for said District, and submits the following trial brief.

I.  Overview of the Facts

Investigation

Sgt. Adam Kavanaugh of the St. Louis County Police Department was conducting ongoing undercover investigations into person advertising online who wished to engage in the sexual exploitation of minors. Sgt. Kavanaugh located an ad on "Craigslist" that stated:

still looking for my taboo guy that films –m4m (sw city)
I'm looking for fathers and brothers, love to play hidden cams, bi and oral safe and clean.

Based upon his training and experience, Sgt. Kavanaugh believed that the ad was seeking to make contact with persons using hidden cameras on family members. Sgt. Kavanaugh responded using his undercover persona of "Larry." Sgt. Kavanaugh was later able to identify the person as Ramori Rogers, the defendant. During the course of their correspondence, defendant

1

wrote, "Not a scam at all just a horny 30 year old blk male that's a huge freak and looking for taboo men like me...love all kinds of crazy things from family and more." Sgt. Kavanaugh believed that defendant's reference to "family" and "taboo" meant that he was looking for hidden family style videos.

As they continued to communicate, the defendant said he had a daughter. Later, defendant and "Larry" talked on the phone on October 22, 2015. During the conversation defendant said he lived in Webster Groves and had a daughter who was fourteen years old. He said he had been researching hidden cameras to put one in his daughter's room, one in the bathroom because his daughter had friends coming over. Defendant said that he wanted to meet "Larry" personally because he did not want to send the videos on the internet. Defendant did not want to see pictures on his daughter posted on the internet. Defendant described his daughter as fourteen but she looked like a woman. He said he has been trying to record his daughter masturbating in the shower. He said he had a video of him "fucking" his stepdaughter. He said that the first time he had sex with his stepdaughter was when she was seventeen. Defendant then said that they should meet to exchange videos. Defendant identified himself as "Mori." They made plans for "Larry" to call in the evening.

During the evening on October 22, 2015, "Larry" called the defendant. The defendant talked about age of consent in various states. He said in South Carolina, the age of consent was 14, and the age of consent in Kansas was 15. He said that he could take her daughter's friends on vacation and have sex with them legally in those states. Defendant said that if he took pictures of someone underage it was child pornography. Defendant described web sites where "Larry" could obtain images of younger children. He also described his daughter in a sexual manner. He said that he had been recording his daughter for the last two years.

The next time they talk by phone is October 23, 2015. During the conversation defendant said that he stole a lot of guns and was caught and sentenced to five years' probation. Then he was charged with assault second, was revoked and sent to prison. Defendant talked about minor friends of his daughter. Defendant discussed how he figured out how to turn the light off on his laptop's computer. He discussed how he planned to get hidden cameras. Defendant provided "Larry" with websites where he could find images of naked girls. During the conversation, defendant said he was masturbating to images of an 18 or 19 years old girl. He again started talking about his minor daughter.

Defendant said his daughter spent the night with him at a hotel. He was playing around with her one day and stripped her naked and threw her into the shower. He said prior to that he has touched her "hairs" but not the vaginal area, he gave her a massage and rubbed her breasts. He said that his daughter knew he wanted to have intercourse with her. Defendant also said he was at a swingers get together and engaged in contact with a fifteen-year-old girl but did not have intercourse with her.

The telephone conversations continued on October 26, 2015. Defendant discussed his family and identified his fourteen-year-old daughter as "K."   Defendant said he caught his fifteen-year-old watching child porn. He said that about a year earlier, before the defendant was there, the police took the computer of defendant's son. Later, defendant and "Larry" talked about meeting in person. They did not finalize their plans to meet.

On November 2, 2015, officers contacted Kathleen Rogers at her residence. She informed the officers that defendant was residing in Webster Groves, Missouri, at 1203 Pine Tree, with his girlfriend, K.L.   Kathleen Rogers also said that "K" was temporarily living at the Pine Tree residence too.

Det. Slaughter applied for and was granted a search warrant for the residence. On November 4, 2015, the search warrant was properly executed at 1203 Pine Tree. Various electronic items, along with some illegal narcotics, were seized.

Defendant was arrested by the St. Louis Metropolitan Police Department based on the investigation as well as an active warrant. A search incident to arrest was conducted and a Kyocera cellular phone was seized from defendant's person. Defendant told the police he had hepatitis and was provided a medical mask.

Sgt. Kavanaugh and Det. Black went picked up the defendant from the City police. When asked about the mask, the defendant said he lied to the arresting officers and told them he had hepatitis to try to avoid arrest.

Defendant was handcuffed and placed in Sgt. Kavanaugh's vehicle. During a recorded conversation, Sgt. Kavanaugh informed defendant of his Miranda rights, which the defendant acknowledged that he understood. During the conversation, defendant denied any improper contact or video recording of "K." He said that "K" was fourteen years old.   Defendant also said that he believed it was K.L.'s older son who had been downloading child pornography at the residence.

Once they arrived at the police department, the interview continued, and was again recorded. Defendant admitted that he had been texting and emailing "Larry" and that they had talked on the phone. Defendant confirmed that they communicated about his Craigslist ad, hidden cameras and websites. Defendant admitted that he and Larry talked about meeting to watch pornography and masturbate, but defendant denied that they were going to watch child pornography. Defendant denied making any videos of "K" and denied engaging in sexual contact with any minor. However, defendant did admit that he wanted to leave the state and have sex with

"K's" sixteen-year-old friend. Defendant later requested an attorney and the interview ended.

Det. Amy Meyer interviewed "K." "K" said that on November 3, 2015, defendant directed her to shower in the downstairs bathroom. She said that it was unusual because she usually showered in the upstairs shower and the downstairs shower did not have shower curtains. "K" also discussed an incident in May of 2015 when the defendant gripped and twisted one of the nipples of her breasts.

On November 5, 2015, St. Louis County police officers applied for and obtained a search warrant for the Kyocera cellular phone seized from the defendant.

Forensic Technician Koenig conducted a preliminary examination of the seized items. One of the items was an HP Presario laptop, which was marked as Item 2. The laptop contained a Toshiba hard drive. Tech. Koenig located multiple homemade videos and images that depicted "K," nude, stepping in and out of shower. One of the videos was of defendant sitting behind the camera to capture the nude video of "K." The images depicted "K's" breasts and appeared to have been taken while she slept.   Some of the videos show "K's" breasts and vagina.

As the investigation continued, officers were able to determine that some of the videos of "K" were taken at Stratford Inn, located at 800 South Highway Drive, Fenton, Missouri.

Forensics

Tech. Keonig examined the seized items and located child pornography on the following: HP Presario laptop and its Toshiba hard drive (Item 2), Elite Pro 4GB SD card, Toshiba 320GB hard drive that was produced in China and therefore traveled in interstate and foreign commerce.

Item 10, defendant's Kyocera cell phone, was produced in Malaysia and therefore traveled in interstate and foreign commerce. The phone contained a 2GB Micro SD cared that was produced in the Philippines and therefore traveled in interstate and foreign commerce.

Item 2 contained 81 images of child pornography in a directory labeled "Downloads," which was located in the User "Tony's" folder.   Also located under the "Tony" profile were four (4) images of a minor's breasts that appeared to be taken while she was asleep, and nine (9) videos of her undressed.

Some of the videos located included multiple images of minors without clothing, either in a gym setting or in a forest setting.   The images were located in folder labeled "Babies" and followed by a number.

Regarding the videos of "K," there were pictures of her getting undressed and taking a shower. The camera was located at waist height of "K" and pointed toward the shower. "K" was depicted opening the shower curtain and exposing herself to the camera. It did not appear that she was aware that the videos were being taken. The videos were located in the file path: /Users/Tony/Documents/Youcam.

In the Youcam folder were approximately 199 short video segments that only captured a closed shower curtain with the sounds of running water. These clips were named sequentially with a naming convention using "Capture" followed by the date and a sequential number. The clips that depicted "K" were renamed, such as "4.wmv," or "yupp2.wmv."

Some of the images of "K" contained EXIF data that showed the photographs were created with a Kodak EasyShare C143 digital camera and created on January 19, 2014, at 12:41.

In two of the videos, the camera appears to be placed in a living room slightly below waist level and aimed toward a door.

Further examination of the computer showed that there were five (5) users: Administrator, Guest, Tony, HomeGroupUer$, and "K."   The primary user was Tony who had logged on 1,732 times, and last logged onto the computer on November 4, 2015, at 5:37:59 p.m.   There was

also evidence of Google searches for "Hidden Cameras St Louis," "Incest," "Incest Porn," "Motion detector camera," and "wireless motion detector security camera," as well as others. There were also searches for "smoke detector cameras," "hidden cameras," "Day and Night Camera hidden in smoke alarm," and "Covert video security and Surveillance camera systems."

On November 2, 2015, there was a search on the website "The Home Security Superstore" for IR Motion Alarm spy camera equipment. There was also a history of YouTube videos featuring hidden motion cameras with remotes, Nanny Cams, HD Spy cameras, and covert hidden camera reviews.

Tech. Koenig also located an account logon for Craigslist.org that used the email address ramori.sr@hotmail.com. This was the same email address used for a Facebook account login. There was a history of visits to the Facebook page of Ramori T. Rogers (Ramori Poppa Rogers) with the last visit on November 2, 2015, at 8:45 a.m.

Tech. Koenig also found child pornography on defendant's Kyocera cell phone (Item 10).

Det. Donnie Hovis, assigned to ICAC, and who is a qualified forensic examiner also examined a defendant's Kyocera cell phone using the Chip-Off technique. The cell phone contained a 2GB Samsung MicroSD card. Officer Hovis located emails pertaining to the user of the device and another subject regarding meeting to share his wife and child. There were also images of young children nude and google searches for the images.

    II.    <u>Legal Issues</u>

        A.    <u>Elements of the Offense of Attempted Sexual Exploitation of a Minor</u>

The Indictment charges defendant in Count One with Attempted Sexual Exploitation of a Minor in violation of Title 18, United States Code, Section 2251(a). The essential elements of this violation of Title 18, United States Code, Section 2251(a) are: (1) defendant knowingly attempted

use a minor to engage in sexually explicit conduct, (2) for the purpose of attempting to produce a visual depiction of such conduct, and (3) the materials used to attempt to produce the visual depiction had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone.

      B.  Elements of Possession of Child Pornography

In Count Two, defendant is charged with Possession of Child Pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). The essential elements of this offense are: (1) defendant knowingly possessed material (2) that defendant knew contained images of child pornography (3) which were visual depictions where the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct and such visual depictions were of a minor engaging in sexually explicit conduct (4) that the material containing the child pornography had been mailed, shipped or transported in interstate or foreign commerce by any means, including by computer.

      E.  Definitions

"Sexually explicit conduct" means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, oral-anal, whether between persons of the same or opposite sex; masturbation; and the lascivious exhibition of the genitals or pubic area of any person.

Defendant is charged in Count One with Attempted Sexual Exploitation of a Minor for the videos contained on his Toshiba hard drive. Count One involves videos that depict an attempt to display "K" in a lascivious display of her genitals.

The definition of "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." Title 18, United States Code, Section 2256(2)(A)(v). The

8

Eighth Circuit Court of Appeals held that when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer, the depiction is lascivious." United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999). "[E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual." United States v. Johnson, 639 F.3d 433, 440 (8th Cir. 2011). Thus, a reasonable jury could determine that "secretly recorded videos were intended by the defendant to capture a lascivious exhibition of the genitals of the young women and were intended to elicit sexual response in the viewer." Johnson, 639 F.3d at 440.

In Johnson, the court explained how to determine whether images were "lascivious:"

In determining whether images are "lascivious," we have referred to the criteria listed in United States v. Dost, 636 F.Supp. 828, 832 (S.D.Cal.1986), aff'd sub nom., United States v. Wiegand, 812 F.2d 1239 (9th Cir.), cert. denied, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). The factors in Dost included:

(1) whether the focal point of the picture is on the minor's genitals or pubic area;
(2) whether the setting of the picture is sexually suggestive;
(3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age;
(4) whether the minor is fully or partially clothed or is nude;
(5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and
(6) whether the image is intended to elicit a sexual response in the viewer.

Id.; see also United States v. Horn, 187 F.3d 781, 789 (8th Cir.1999) (citing the Dost criteria), cert. denied, 529 U.S. 1029, 120 S.Ct. 1442, 146 L.Ed.2d 330 (2000). However, while we consider these criteria, they are "neither definitive nor exhaustive." Horn, 187 F.3d at 789. "'All six Dost factors need not be present in order to bring the depiction under the proscription of the statute.'" United States v. Wallenfang, 568 F.3d 649, 657 (8th Cir.2009) (quoting United States v. Wolf, 890 F.2d 241, 245 (10th Cir.1989)) (alterations omitted).
. . .
The fact that the young women in the videos were not acting in an obviously sexual

9

> manner, suggesting coyness or a willingness to engage in sexual activity, does not necessarily indicate that the videos themselves were not or were not intended to be lascivious. In Horn, we explained that "'lascivious exhibition'" need not necessarily be "the work of the child, whose innocence is not in question, but of the producer or editor of the video." Horn, 187 F.3d at 790. Thus, even images of children acting innocently can be considered lascivious if they are intended to be sexual. We further made clear that the fact that three of the Dost factors—a sexually suggestive setting, inappropriate attire or unnatural poses, and a suggestion of sexual coyness—were not relevant to that case did not prevent the images from being lascivious. Id.

Johnson, 639 F.3d at 439-40.

The Eighth Circuit Model Pattern Instruction "6.18.2252A 'Lascivious' Explained," is modeled after the Dost factors.

In the instant offense, "K" was video recorded getting in and out of the shower. It is anticipated that defendant will argue that this is "mere nudity" and not child pornography because "K" was not acting in an obviously sexual manner, suggesting coyness or a willingness to engage in sexual activity. Regardless of "K's" actions in the shower, even images of children acting innocently can be considered lascivious if they are intended to be sexual. The question is whether defendant intended the videos to be sexual in nature and to elicit a sexual response in the viewer.

Defendant's intent can be inferred from statements he made about attempting to record his daughter masturbating in the shower. See Johnson, 639 F.3d 441 ("Furthermore, statements made by the producer about the images are relevant in determining whether the images were intended to elicit a sexual response in the view."). Defendant also admitted that he was a "perv." Cf. id. at 436 ("During the interview, [Johnson] admitted that 'my pervertedness got the best of me.'"). Defendant added, the older he got, the younger he liked them.

Finally, because the defendant is charged with attempting to produce images of child pornography, the Court does not have to find that defendant actually produced images of child

pornography, only that he attempted to produce them.

      F.      Federal Jurisdiction

The jurisdictional basis for prosecution of Sexual Exploitation of a Minor based upon the materials being transported in interstate commerce has been approved.   United States v. McCloud, 590 F.3d 560, 568 (8th Cir. 2009); United States v. Pliego, 578 F.3d 944 (8th Cir. 2009). The Government will introduce business records or trade inscriptions that indicate the hard drive Toshibia was produced outside of Missouri. Fed. Rule Ev. 902(4) and (7).

    III.    Evidentiary Issues

      A.      Birth Certificate

The Government intends to introduce birth certificates of "K." Rule 902(4) of the Federal Rules of Evidence provides that:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certificates, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.

"K's" birth certificate will be used to establish that "K" was a minor during the time periods charged in the Indictment, and that defendant was her father.

      B.      Product Labels

The Government will introduce evidence of the Toshiba hard drive's product label to indicate the manufacturer and origin of the hard drive. The evidence falls within the residual hearsay exceptions under Fed.R.Evid. 807, and is self-authenticating under Fed.R.Evid. 902(7). See United States v. Koch, 625 F.3d 470, 479-80 (8th Cir. 2010) (Manufacturer's inscription on a

product is admissible to prove place of manufacture); <u>United States v. Henry</u>, 3804, Slip Op. No 09, 2010 WL 4845742, *1 (8th Cir. Nov. 30, 2010); <u>see also</u> <u>United States v. Burdulis</u>, 753 F.3d 255, 263 (1st Cir. 2014) ("Made in China" inscription on thumb drive fell within the residual exception in Fed.R.Evid. 807, and was self-authenticating under Fed.R.Evid. 902(7)); <u>United States v. Saguil</u>, 600 Fed.Appx. 945, 946 (5th Cir. 2015) (manufacture's label was admissible under Fed.R.Evid. 807 and 902(7)).

        D.    <u>Evidence of Defendant's Recorded Telephone Calls</u>

The Government intends to introduce evidence of phone calls made between defendant and "Larry." Additionally, the Government may introduce evidence of phone calls of defendant while he has been in jail. Recordings of the phone calls have been provided to the defense.

        Respectfully submitted,

        JEFFREY B. JENSEN
        United States Attorney


        *s/ Robert F. Livergood*
        ROBERT F. LIVERGOOD, #35432MO
        Assistant United States Attorney
        111 S. 10th Street, Rm. 20.333
        St. Louis, Missouri 63102

CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2017, the foregoing was filed electronically with the Clerk of Court for service on all counsel of record.

        s/*Robert F. Livergood*
        ROBERT F. LIVERGOOD, #35432MO
        Assistant United States Attorney